*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2015-104

JULY TERM, 2015

In re B.H., Juvenile } APPEALED FROM:
}
} Superior Court, Orange Unit,
} Family Division
}
} DOCKET NO. 27-3-14 Oejv

Trial Judge: Amy M. Davenport,
Specially Assigned (Ret.)

In the above-entitled cause, the Clerk will enter:

Mother and father appeal separately from a family-court decision terminating their parental rights to the minor B.H. Father contends that the court erroneously: (1) based its decision on a finding that B.H. would be better off in a different home; and (2) took judicial notice of a fact that was key to its best-interests analysis. Mother contends that the court failed to properly assess whether mother was afforded sufficient services to address the problems that led to State intervention, and that its decision accordingly lacked a rational basis. We affirm.

The facts may be summarized as follows. B.H. was born in late March 2014. Five days later, she was taken into custody by the Department for Children and Families (DCF) pursuant to an emergency care order based on reports by hospital personnel concerning father's belligerent and aggressive behavior toward hospital staff and concerns about mother's ability to safely care for the child. The social worker's affidavit in support of the emergency order outlined the parents' extensive history of involvement with DCF. Father's parental rights to two older children had been terminated in 2009 based, in part, on his physical violence toward the mother and his abuse of drugs and alcohol. His actions led to a conviction of domestic assault and several relief-from-abuse orders.

Mother also had two older children by a different father. One child was taken into DCF custody in September 2010 based on reports of mother's neglect, substance abuse, and unstable housing. Shortly after the birth of her second child, in December 2010, father moved in with mother. Reports of father's assaultive behavior toward mother led to a violation of his probation and incarceration on the underlying domestic-assault conviction. Shortly after his release from prison, father and mother were married. In June 2011, DCF took custody of mother's second child, which provoked threats from father against the DCF caseworker. In September 2011, the State moved to terminate mother's parental rights to both children based on her ongoing failure to address domestic violence in the household, positive drug tests, and failure to attend counseling. Mother voluntarily relinquished her parental rights to the two children in April 2012.

Shortly after she was taken into DCF custody in March 2014, B.H. was placed with a foster family, where she has since remained. A temporary care order authorized two hour supervised visits daily, seven days a week by both parents. Father attended the visits for the first four to six weeks, but was often agitated and threatening during visits, which led to concerns about the child's safety. In April 2014, the child was adjudicated as a child in need of care or supervision, and the court suspended father's visits based on his behavior. Mother continued to visit with B.H., and DCF provided family-time coaching.

The family's DCF caseworker testified that, although the initial case plan was not filed until August 2014, she had earlier provided mother with a written statement of DCF's expectations, including: demonstrating an ability to parent B.H. safely; securing safe and stable housing; completing a mental-health assessment; undergoing individual counseling; and "engag[ing] in positive peer and romantic relationships with adults who do not pose a risk" to mother or the child. The expectations for father included undergoing domestic-violence counseling and parenting education and refraining from physical aggression against mother and others. In October 2014, the court issued a protective order prohibiting father from contacting the family's DCF caseworker, based on threats that father had made against her and DCF. In January 2015, mother obtained a relief-from-abuse order against father, based on an affidavit describing a physical assault and threats, but she later retracted the allegations.

The initial case-plan goal was identified to be termination of parental rights (TPR), and the State filed TPR petitions for both parents in September 2014. The court held a two-day evidentiary hearing in February 2015. The family's DCF caseworker testified that neither parent had demonstrated positive progress toward addressing the concerns that led to the child's removal, and neither was able to parent the child without assistance. She indicated that father had not engaged in domestic-violence counseling, mother had not obtained a mental-health assessment or attended counseling and had refused drug testing; and both mother and B.H. remained vulnerable to domestic abuse.

In late February 2015, the court issued a written decision. While noting that father had participated in a domestic-violence program in 2010, the court found that his behavior had not changed in the years since, and that father's physical and emotional abuse and threatening behavior toward mother and others had continued. The court concluded that father's continued, unabated domestic violence, inability to control his behavior, and lack of insight into his need for help or the effects of his behavior on mother and B.H. posed a significant threat to the child's well-being, and represented an insurmountable obstacle to his ability to resume parental responsibilities within a reasonable time. He had not played a constructive role in the child's life.

The court further found that mother had made it clear that, despite the violence, she intended to remain with father, which rendered her similarly incapable of resuming parental responsibilities within a reasonable time. While acknowledging mother's love for B.H., the court found that her ability to play a constructive role in the child's life was constrained by her choice to remain with father and inability to appreciate the threat this posed to the child. B.H., in the meantime, had become closely bonded to his foster family, and was thriving in their care. Accordingly, the court concluded that termination of parental rights was in the child's best interests, and granted the State's petitions. These separate appeals followed.

Father raises two claims of error. First, he contends the trial court improperly based its decision on a finding that B.H. would be better off in another home. The claim finds no support in the record, which shows only that court determined that B.H. had closely bonded with her foster family and was thriving in their care. While we have held that "parental rights cannot be terminated simply because a child might be better off in another home," In re E.B., 158 Vt. 8, 12 (1992), we have also recognized that a court "must consider a child's relationship with his or her foster parents." Id. at 12-13; see also 33 V.S.A. § 5114(a)(1) (listing "[t]he interaction and interrelationship of the child with his or her . . . foster parents" as one of the factors which the court "shall consider" in determining best interests of child). The trial court here properly considered this factor in light of the record evidence. Accordingly, we find no error.

Father also contends the court erred when it observed that even if father were "committed today" to addressing his cycle of domestic violence through a program such as DV Solutions, it would take considerable time for father to complete such a program. In its written decision, the court stated that "The court takes judicial notice that these programs typically take a year to eighteen months to complete" and that "is not a reasonable time given [B.H.'s] young age." Father notes that the court failed to afford the parties "an opportunity to be heard as to the propriety of taking judicial notice" of the time required to complete the program in question, as required by Vermont Rule of Evidence 201(e). He asserts that this error "went to the heart of the best-interest analysis" and requires reversal.

Although the court erred in failing to follow the procedural requirements of Rule 201, the record does not support father's claim that the error was prejudicial. Before any mention of the program in question, the court extensively reviewed father's long history of domestic violence, including four relief-from-abuse orders between 1998 and 2009; his 2009 conviction of domestic assault against a former partner and the mother of his two older children; and earlier convictions for disorderly conduct and disturbing the peace. The court also noted that father continued to engage in assaultive and threatening behaviors toward mother and others even after completing a yearlong domestic-violence treatment program called Alternatives from 2010 to 2011. This behavior, the court noted, led to the suspension of father's visits with B.H., to further relief-from abuse orders against father, and to father's incarceration after being found in violation of the conditions of his probation.

It was this extensive record of domestic violence—persisting even after father went through a treatment program—that underlay the trial court's conclusion that father could not resume parental responsibilities within a reasonable time. See 33 V.S.A § 5114(a)(3) (requiring court to consider, in determining best interests of the child, "[t]he likelihood that the parent will be able to resume or assume parental duties within a reasonable period of time."). The specific length of the DV Solutions program did not drive the trial court's analysis; rather, the court focused on the general reality that successfully addressing father's persistent pattern of domestic violence would necessarily take more time than would be reasonable for the young child. Accordingly, we find no prejudicial error in the court's taking of judicial notice, and therefore no basis to disturb the judgment as to father. See In re R.W., 2011 VT 124, ¶ 17, 191 Vt. 108 (noting that we will reverse TPR judgment only where error affected "substantial right" of party); Jakab v. Jakab, 163 Vt. 575, 579-80 (1995) (holding that error in taking judicial notice was harmless in light of substantial independent evidence supporting same findings).

In her separate appeal, mother contends the trial court's finding that she could not resume parental responsibilities within a reasonable time was unsupported because DCF failed to

provide her with sufficient services to address the causes and conditions which resulted in removal of the child. See In re J.T., 166 Vt. 173, 180 (1997) (observing that, while express findings on the adequacy of services offered parents are not required, such assistance is "a factor in determining whether [DCF] met its burden of showing that a parent is unlikely to be able to resume parental duties within a reasonable period of time"). Mother claims that DCF did not adequately inform her of its concerns about father's domestic violence or offer services to address them.

The record does not support mother's claims. The family's DCF caseworker testified that she reviewed the case plan's list of goals and expectations with mother before the plan was filed in August 2014. The plan required mother to maintain a safe home, attend counseling, advocate for B.H.'s best interests, and recognize and rectify dangerous situations. The family's DCF caseworker testified that she referred mother to Northeast Kingdom Human Services for an evaluation and counseling, but mother did not ultimately schedule a meeting or attend counseling. In her testimony, mother expressly acknowledged that she understood that DCF's "primary concern . . . all along has been the domestic-violence issue," and its concern that B.H.'s safety was at risk if "living in the same household with [father]." In fact, concerns about the danger to mother's other children posed by mother's relationship with father contributed to DCF's petition to terminate mother's parental rights with respect to her two other children. Despite this history, mother insisted that domestic violence was not an issue between her and father, that there was, in fact, "no violence" in the household, and that her past allegations of abuse by father were the result of "stress."

We thus find no merit to the claim that mother either failed to understand that father's domestic violence was the principal issue which she was required to address, or that she was not afforded adequate means to do so. Accordingly, we find no basis to disturb the judgment as to mother.

Affirmed.

BY THE COURT:

_____
Marilyn S. Skoglund, Associate Justice

_____
Beth Robinson, Associate Justice

_____
Harold E. Eaton, Jr., Associate Justice

4